IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(Northern Division)

| | | |
|---|---|---|
| KOURTNEY HAMEL<br>119 Colvard Court<br>Forest Hill, Maryland 21050, | * <br> * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:16-cv-2876 |
| | * | |
| BOARD OF EDUCATION<br>OF HARFORD COUNTY<br>102 South Hickory Avenue<br>Bel Air, Maryland 21014, | * <br> * | |
| Defendant. | * | |

\* \* \* \*   ooo0ooo   \* \* \* \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kourtney Hamel, by her undersigned counsel, Daniel F. Goldstein, Chelsea J. Crawford, and Brown, Goldstein & Levy, LLP, files this complaint against the Board of Education of Harford County and alleges as follows:

## INTRODUCTION

1. This action arises from unlawful disability-based employment discrimination by Defendant against Kourtney Hamel, in violation of Title I of the Americans with Disabilities Act of 1990 as amended ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). This discrimination included disparate treatment of Ms. Hamel based on her disability and Defendant's failure to make reasonable accommodations. For eight years, Ms. Hamel worked as an elementary school teacher in Harford County. During the last four years of that time, she was subjected to a wide range of discriminatory conduct, including bullying, harassment, and

intrusive inquiries into her disability. As a result of the unlawful discrimination that Ms. Hamel endured, her disability has been exacerbated and she suffers from post-traumatic stress disorder ("PTSD"). This lawsuit seeks to compensate Ms. Hamel for her injuries and put an end to the Board of Education of Harford County's unlawful treatment of individuals with disabilities.

## JURISDICTION

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Board of Education of Harford County is located within this District and the unlawful conduct alleged herein occurred in this District.

## PARTIES

4.     Plaintiff Kourtney Hamel ("Ms. Hamel") is an individual living in Forest Hill, Maryland and is an otherwise qualified or qualified individual with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 705(9)(B) and of the ADA, 42 U.S.C. § 12102(2). Ms. Hamel was employed as a teacher by the Board of Education of Harford County from May 2006 until her disability retirement in March 2014. Ms. Hamel was able to perform the essential functions of her job with or without reasonable accommodations. Her physical disability substantially limits the major life activities of walking, bending, standing, sitting, all forms of mobility, sleeping, and caring for herself.

5.     Defendant, the Board of Education of Harford County ("the Board"), is a public school system in Harford County, Maryland with more than 15 employees. The Board is a covered entity under 42 U.S.C. § 12111(2) of the ADA and at all relevant times has been

engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5).

## FACTUAL ALLEGATIONS

6. Ms. Hamel is a 33-year-old, college-educated woman. She suffers from Ehlers-Danlos Syndrome ("EDS"), a group of inherited disorders that affect connective tissues, primarily skin, joints, and blood vessel walls. Because the connective tissues of persons suffering from Ehlers-Danlos syndrome are looser, their joints can move far past the normal range of motion. These overly-flexible joints are subject to frequent, painful dislocations and early-onset arthritis. Ehlers-Danlos syndrome also results in fragile, damaged skin that does not heal well. The syndrome can weaken the aorta as well as the arteries in the kidney, spleen, large intestines, and uterus, making all of the organs vulnerable to rupture. As a result of Ms. Hamel's condition, she walks with the assistance of crutches.

7. Ms. Hamel graduated from Coastal Carolina University in December 2005. Shortly before graduation, she sought employment as a teacher with the Board. In May 2006, the Board hired Ms. Hamel as a fourth-grade teacher at Emmorton Elementary School ("Emmorton"). Ms. Hamel began teaching at the start of the 2006-2007 academic year.

8. Ms. Hamel excelled in her profession. She consistently received high marks on performance evaluations, and her instructional methods were used as models for other teachers to follow. During the first half of her career, Ms. Hamel enjoyed teaching at Emmorton. The school administration worked hard to foster a supportive and collegial environment for teachers and students alike. Ms. Hamel looked forward to work each day and planned to teach for as long as she could.

9. Everything changed in 2010, however, with the arrival of new school administrators. Peter Carpenter, Ph.D., joined Emmorton as Principal in 2010, followed by

Audrey Vohs who joined Emmorton the following year as Assistant-Principal. Dr. Carpenter and Ms. Vohs singled Ms. Hamel out because of her disability and engaged in a pattern of unlawful disability-related discrimination.

10.     During Dr. Carpenter's first year at Emmorton, Ms. Hamel arranged a meeting with him in which she informed Dr. Carpenter that she would be taking several weeks of leave under the Family Medical Leave Act to continue healing from a recent hip surgery. From this point forward, Ms. Hamel became the target of discriminatory conduct from Dr. Carpenter, Ms. Vohs, and other Board employees. The Board treated Ms. Hamel differently than non-disabled teachers by: (1) creating a subjectively and objectively hostile work environment; and (2) making frequent and intrusive inquiries into Ms. Hamel's disability that were not related to her job or necessitated by the Board's business operations. The Board also failed to act on Ms. Hamel's requests for reasonable accommodations, solely on the basis of her disability.

11.     Dr. Carpenter and Ms. Vohs created a hostile work environment that was objectively severe and pervasive. Dr. Carpenter changed school policies to make it more difficult for Ms. Hamel to perform her job effectively, and he urged teachers to participate in activities geared toward non-disabled individuals with the intent of excluding Ms. Hamel from the school community.  On numerous occasions, he made gratuitous and slighting remarks or intrusive inquiries about her disability.

12.     Dr. Carpenter invoked two policy changes with little to no advance warning. He unilaterally changed school policy to prohibit students from retrieving items from teachers' mailboxes when it was well known to Dr. Carpenter and other administrators that Ms. Hamel routinely sent a student to the main office to deliver or retrieve mail items on her behalf.

13.     Dr. Carpenter also advised Ms. Hamel that she must accompany her students at

all times as they moved throughout the school building, even when her students traveled from floor to floor via the stairwell. While Ms. Hamel was capable of maneuvering the stairwell using her crutches, doing so was exceedingly difficult and required her full concentration. She could not properly supervise her students and react quickly in the event of an emergency while using the stairs. The prior administration permitted Ms. Hamel to use the elevator while another staff member supervised her students in the stairwell.  Dr. Carpenter was aware of this arrangement, but nevertheless required Ms. Hamel to personally supervise her students on the stairwell, effectively prohibiting her from accessing the elevator.

14. Dr. Carpenter and other school administrators also applied existing school policies unfairly and at Ms. Hamel's expense. School policy required teachers to submit a doctor's note after three consecutive days of absence. Ms. Vohs demanded a doctor's note after Ms. Hamel was absent for one day in May 2013 because of a medical issue unrelated to her disability.  Ms. Hamel provided the note and was later accused by Dr. Carpenter—in front of her students—of having altered the note. The Board later acknowledged that it required a doctor's note from Ms. Hamel for her one-day absence because she had a string of absences, which had been disability-related, the month prior. The Board's acknowledgement effectively concedes that it unfairly applied its policy regarding doctor's notes on the basis of Ms. Hamel's disability.

15. Dr. Carpenter and Ms. Vohs engaged in conduct to interfere with Ms. Hamel's work performance and to disrupt her routine and the routine of her students. In 2011, Dr. Carpenter moved Ms. Hamel's classroom from the third floor, where she co-taught with another member of her educational unit, to the first floor.  The new location of Ms. Hamel's classroom split the educational team across two floors and separated Ms. Hamel from the teacher with

whom she co-taught. Ms. Hamel's new classroom was also less accessible to the elevator and required Ms. Hamel to walk through an instructional area to the other side of the school building to access the elevator. The location of Ms. Hamel's classroom was so inconvenient to the elevator that she often used the stairs.

16.     Dr. Carpenter also unfairly focused on Ms. Hamel by increasing the frequency of Ms. Hamel's classroom observations. Dr. Carpenter even went so far as to maintain a log documenting, among other things, Ms. Hamel's medically-related absences and conditions.  To Ms. Hamel's knowledge, Dr. Carpenter did not keep any such log for non-disabled teachers.

17.     Dr. Carpenter and Ms. Vohs frustrated Ms. Hamel's efforts to teach at every turn. During the standardized testing period of the 2011-2012 academic year, Ms. Hamel requested permission to have a staff member help her carry boxes of testing materials to her classroom. Given that Ms. Hamel walked with crutches, it was difficult for her to carry the testing materials without assistance. Hellen Ellenby, a counselor and testing coordinator at Emmorton, volunteered to assist Ms. Hamel, but Ms. Vohs informed Ms. Hamel that Ms. Ellenby was not permitted to help, and that Ms. Hamel was required to carry the testing materials herself.

18.     Dr. Carpenter and Ms. Vohs also excluded Ms. Hamel from the school community by developing activities, in which teachers were required to participate, which failed to consider Ms. Hamel's mobility restrictions. Teachers were required to participate in a "flash mob" dance during a student assembly. Unable to participate, Ms. Hamel was forced to observe the dance from the student bleachers.

19.     On August 28, 2013, Dr. Carpenter held a faculty meeting in which he asked teachers to sign up for a program where they were required to meet students at the public library

and walk the students to school. One teacher commented that Ms. Hamel would need a wheelchair and referred to her educational unit as the "gimp team." Ms. Hamel was so humiliated and distraught by this incident that she became physically ill and was escorted off school premises by her father.

20.     In addition to creating a hostile work environment, Dr. Carpenter and Ms. Vohs made frequent, unlawful inquiries into Ms. Hamel's disability. These inquiries were neither job-related nor consistent with business necessity.

21.     On February 16, 2012, Ms. Hamel met with Dr. Carpenter, Ms. Vohs, and Peggy Weinbeck, an Instructional Facilitator, for an evaluation conference of Ms. Hamel's performance. During the conference, Ms. Vohs inquired into Ms. Hamel's medical condition and commented that Ms. Hamel's daily physical therapy appointments were affecting her job. Dr. Carpenter then began inquiring into Ms. Hamel's medical appointments before being advised by Ms. Weinbeck to stop. The inquiries by Ms. Vohs and Dr. Carpenter were completely unnecessary and unrelated to the assessment of Ms. Hamel's teaching performance.

22.     In May 2012, a chair that Ms. Hamel was sitting in collapsed. Ms. Hamel suffered some bruising and shoulder pain, but was not seriously injured. At the behest of the school nurse, Ms. Hamel completed an accident report. Ms. Vohs, in turn, completed a supervisor's accident report and, in a meeting with Ms. Hamel, requested that Ms. Hamel identify her disability. Ms. Hamel refused to provide the name of her disability because it was unaffected by the fall. Despite Ms. Hamel's refusal to identify her disability, Ms. Vohs independently learned the name of Ms. Hamel's disability and incorrectly identified it on the report as "Eller's."

23.     On December 4, 2012, Dr. Carpenter held a meeting in his office with Ms.

Hamel and Ms. Vohs. Dr. Carpenter told Ms. Hamel that the meeting was to discuss her professional characteristics, yet both Dr. Carpenter and Ms. Vohs spent an inordinate amount of time inquiring into Ms. Hamel's disability. Uncomfortable with sharing details of her disability, Ms. Hamel provided generic answers to their questions, which only prompted Dr. Carpenter and Ms. Vohs to insist that Ms. Hamel should not feel ashamed of her condition. Ms. Hamel assured Dr. Carpenter and Ms. Vohs that her job was unaffected by her disability, and that she was capable of performing the essential functions of her job.

24. The actions of Dr. Carpenter and Ms. Vohs were so damaging to Ms. Hamel's mental state that she repeatedly requested a transfer to another school as a reasonable accommodation under the ADA. The Board took no action in response to Ms. Hamel's requests.

25. On May 14, 2013, Ms. Hamel's attorney, Joseph P. Meadows, wrote a letter to Patrick Spicer, General Counsel to the Board, requesting a transfer to another elementary school in Harford County. On May 28, 2013, Melanie Wernig, the ADA coordinator for the Board, emailed Ms. Hamel asking her to complete an Employee Request for Accommodation form and requesting Ms. Hamel's physicians to complete an ADA Medical Questionnaire. Ms. Hamel completed the form on May 30, 2013, and requested the following accommodations: (1) a classroom close to her teammates and access to an elevator if needed; and (2) a transfer to another elementary school in the northern part of Harford County.

26. In a letter dated June 19, 2013, Ms. Wernig informed Ms. Hamel that, after review of her request for accommodation, the Board would provide the following accommodations: (1) Ms. Hamel's classroom would be located in the same area and floor of the building as the rest of her team, and if needed, Ms. Hamel would be given access to the elevator; and (2) Ms. Hamel would be permitted to utilize a chair when supervising free play.

The Board failed to address Ms. Hamel's request for a transfer to another school in its letter. It was not until Ms. Hamel emailed Ms. Wernig several days later on June 26, 2013, inquiring into whether the Board would be providing a transfer that Ms. Wernig stated that a transfer would not be provided as an ADA accommodation.

27. Ms. Hamel's attorney, Eric McLauchlin, twice requested that Ms. Hamel be transferred to another school to avoid further conflict with Dr. Carpenter and Ms. Vohs; however, the Board never responded.

28. On November 13, 2013, the Board informed Ms. Hamel that her position had been permanently filled and that, once she was medically cleared to return to work, she would be reinstated in the next position available.

29. Ms. Hamel experiences PTSD and major depressive disorder as a result of the bullying, intimidation, and hostile environment in which she had to work. She has distressing memories of working with Dr. Carpenter, which often trigger physiological responses. Ms. Hamel also has difficulty concentrating and experiences panic attacks when in or around Emmorton.

30. Ms. Hamel's current condition, along with her disability, prohibits her from returning to work as a teacher.

## CAUSES OF ACTION

### COUNT I

### (VIOLATION OF REHABILITATION ACT)

31. Ms. Hamel re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

32. Ms. Hamel is an otherwise qualified individual with a disability under Section

504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and its implementing regulations.

33. The Board received and continues to receive federal financial assistance and is therefore a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

34. The Board had notice of Ms. Hamel's disability and denied her the following requests for accommodation: assistance carrying testing materials, access to the elevator while Ms. Hamel's students traveled throughout the school building, and a transfer to another school. The Board's denials of Ms. Hamel's requests for accommodation were solely on the basis of her disability in violation of 29 U.S.C. § 794 *et seq*.

35. The Board violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by creating a subjectively and objectively hostile work environment solely on the basis of Ms. Hamel's disability by: (1) changing school policies and unfairly applying existing policies to Ms. Hamel's detriment; (2) increasing the frequency of observations of Ms. Hamel's classroom; (3) developing school activities for non-disabled individuals with the intent of excluding and humiliating Ms. Hamel; and (4) changing the location of Ms. Hamel's classroom to frustrate her ability to teach. This conduct was severe, pervasive, and objectively hostile.

## COUNT II

### (VIOLATION OF TITLE I OF THE ADA)

36. Ms. Hamel re-alleges and incorporates herein all previously alleged paragraphs of the Complaint.

37. Ms. Hamel is a qualified individual with a disability under the ADA, 42 U.S.C. § 12101 *et seq*., and its implementing regulations.

38. The Board had notice of Ms. Hamel's disability and denied her the following requests for accommodation: assistance carrying testing materials, access to the elevator while

Ms. Hamel's students traveled throughout the school building, and a transfer to another school. The Board's denials of Ms. Hamel's requests for accommodation were solely on the basis of her disability in violation of 42 U.S.C. § 12112.

39. The Board also created a hostile work environment solely on the basis of Ms. Hamel's disability in violation of 42 U.S.C. § 12112 by: (1) changing school policies and unfairly applying existing policies to Ms. Hamel's detriment; (2) increasing the frequency of observations of Ms. Hamel's classroom; (3) developing school activities for non-disabled individuals with the intent of excluding and humiliating Ms. Hamel; and (4) changing the location of Ms. Hamel's classroom to frustrate her ability to teach. This conduct was severe, pervasive, and objectively hostile.

40. The Board made unlawful inquiries into Ms. Hamel's health that were unrelated to her job and not necessitated by the Board's business operations.

41. On or about April 3, 2014, Ms. Hamel filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title I of the ADA by Harford County Public Schools. The EEOC issued a Right to Sue letter on May 25, 2016. As a result, Ms. Hamel has exhausted all available administrative remedies prior to the filing of this Complaint.

**RELIEF REQUESTED**

Plaintiff requests that this Court:

(a) Enter a Declaratory Judgment stating that the Defendant has violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Americans with Disabilities Act by not providing Ms. Hamel with reasonable accommodations and by engaging in disparate treatment of Ms. Hamel solely on the basis of her disability;

(b) Award Ms. Hamel lost employee benefits, including the costs of entering disability retirement prior to a minimum of 10 years of service;

(c) Award Ms. Hamel front pay from the date of her disability retirement to the date on which she would have ceased working, but for the Board's discriminatory conduct;

(d) Award Ms. Hamel back pay from the date of her disability retirement to the date that judgment is rendered in this action;

(e) Award Ms. Hamel compensatory damages;

(f) Award Ms. Hamel punitive damages;

(g) Award Ms. Hamel her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 794 and 42 U.S.C. § 12205; and

(h) Award such other further relief as justice may require.

Respectfully submitted,

/s/ Daniel F. Goldstein
Daniel F. Goldstein (Fed. Bar No. 01036)
Chelsea J. Crawford (Fed. Bar No. 19155)
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland  21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
dfg@browngold.com
ccrawford@browngold.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial.

_____
Daniel F. Goldstein

Dated:  August 15, 2016